IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REBECCA HEMPHILL,

      Plaintiff,

      v.                                   Case No. 16-2557-JAR-GLR

PERSHING, LLC,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff brings this action alleging jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on behalf of herself and other investors who owned tax-deferred brokerage accounts that earned more than $1000 of unrelated business taxable income in 2014. The Complaint alleges that Plaintiff and other putative class members incurred more than $5,000,000 in damages as a result of Defendant Pershing LLC's ("Pershing") failure to timely file Internal Revenue Service ("IRS") Form 990-T filings for the relevant accounts. This matter is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) (Doc. 20). Plaintiff was permitted to conduct discovery on the jurisdictional issues,[1] and supplemental briefs were submitted.[2] For the reasons explained in detail below, the Court grants Defendant's motion and dismisses the case without prejudice.

## I.     Standard

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory

---

[1]Doc. 25.

[2]Docs. 27, 30.

or constitutional basis to exercise jurisdiction.[3]  A court lacking jurisdiction must dismiss the

case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is

lacking.[4]  The party who seeks to invoke federal jurisdiction bears the burden of establishing that

such jurisdiction is proper.[5]  Mere conclusory allegations of jurisdiction are not enough.[6]

Generally, a Rule 12(b)(1) motion takes one of two forms:  a facial attack or a factual

attack.  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction

questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a

district court must accept the allegations in the complaint as true."[7]  "Second, a party may go

beyond allegations contained in the complaint and challenge the facts upon which subject matter

jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district

court may not presume the truthfulness of the complaint's factual allegations.  A court has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)."[8]  Here, Defendant brings a factual attack on

the Complaint, urging that the maximum possible amount at issue in this case is far less than the

statutory minimum of $5,000,000.

## II.    Background

The Complaint asserts claims against Pershing for breach of fiduciary duty and

negligence, and seeks actual damages in the form of penalties and interest charged as well as fees

---

[3]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[4]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[5]*Montoya*, 296 F.3d at 955.

[6]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999).

[7]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).

[8]*Id.* at 1003 (citation omitted).

collected by Pershing for preparation of the tax returns.  The proposed class is defined as all Retirement Account owners/holders for which Pershing was or is the custodian or similar fiduciary role over the Retirement Accounts invested in Kinder Morgan limited partnerships during 2014, for which Pershing failed to timely file a Form 990-T filing for the year 2014.  The putative class consists of approximately 5,052 Retirement Accounts.

In support of its motion to dismiss, Pershing submitted an affidavit from its Vice President, Amy E. Pirone, who avers as follows:  Pershing is the largest securities clearing firm in the United States, providing brokerage execution, clearance, and other investment products and services to financial firms, including brokerage firms.  The brokerage firms that utilize Pershing's clearing services are commonly referred to as "introducing firms."[9]  Pershing acts as the custodian for its introducing firms' clients' tax-deferred accounts, including Individual Retirement Accounts ("IRA"), Simplified Employee Pension Plans, Savings Incentive Match Plans for Employees, Roth IRAs and Coverdell Educational Savings Accounts.[10]

An IRS form 990-T filing ("990T-Return") is required for tax-deferred accounts invested in limited partnerships that earned $1000 or more of unrelated business taxable income ("UBTI") during the prior year.[11]  As custodian, or as servicing agent of the custodian, Pershing is responsible for completing and filing a 990T-Return on behalf of tax-deferred accounts that meet these criteria.[12]

In 2014, Plaintiff and other putative class members maintained tax-deferred accounts at Pershing's introducing firms, for which Pershing was the custodian or servicing agent of the

---

[9]Pirone Decl., Doc. 21, Ex. 1 ¶ 4.

[10]*Id.* ¶ 5.

[11]*Id.* ¶ 6.

[12]*Id.* ¶ 7.

custodian (the "Retirement Accounts").[13]  The Retirement Accounts were invested in Kinder Morgan limited partnerships that earned $1000 or more of UBTI during 2014, and thus required that 990T-Returns be filed.[14]  Pershing was responsible for filing a 990T-Return for each of the Retirement Accounts.[15]  Pershing did not file the 990T-Returns for the Retirement Accounts by the April 15, 2015 deadline.  Ultimately, Pershing filed 990T-Returns for 5,052 Retirement Accounts.[16]

Pershing charged a fee for most of the 990T-Returns it filed on behalf of the Retirement Accounts (collectively, the "Tax Return Fees").[17]  Pershing assessed Tax Return Fees against 4,278 Retirement Accounts.[18]  The total Tax Return Fees charged to the Retirement Accounts was $721,000.[19]

Of the 5,052 Retirement Accounts for which a 990T-Return was filed, 2,222 Retirement Accounts incurred taxable UBTI in 2014.[20]  In addition to reporting the required tax payment for these Retirement Accounts, the 990T-Returns that Pershing filed reflected estimated penalties for late filing, late payment and underpayment of estimated taxes, as well as interest on the amount due from April 15, 2015 until the tax returns were filed (collectively, the "Gross Tax-Related Liabilities").[21]  The total Gross Tax-Related Liabilities for the 2,222 Retirement Accounts is

---

[13]*Id.* ¶ 8.

[14]*Id.* ¶ 9.

[15]*Id.* ¶ 10.

[16]*Id.* ¶ 11.

[17]*Id.* ¶ 12.

[18]*Id.* ¶ 13.

[19]*Id.* ¶ 14.

[20]*Id.* ¶ 15.

[21]*Id.* ¶ 16.

$2,535,561.[22]   As of January 30, 2017, the IRS has refunded approximately $1,740,246 of the Gross Tax-Related Liabilities to the Retirement Accounts.[23]   Subtracting the amount refunded from the Gross Tax-Related Liabilities reduced these Liabilities to approximately $795,315 (the "Net Tax-Related Liabilities").[24]   It is anticipated that the Net Tax-Related Liabilities will be further reduced once the IRS completes the refund and abatement process.[25]

After Plaintiff objected that the calculations reflected in the Pirone Declaration were not supported by documentation, Pershing produced to Plaintiff a page from the 990T-Return for each of the 2,222 Retirement Accounts that incurred a Tax-Related Liability in 2014.[26]   A second Pirone Declaration was filed, attesting to the 2,222 documents and stating that the remaining 2,830 Retirement Accounts for which 990T-Returns were filed for the tax year 2014 did not earn taxable UBTI.[27]

## III.    Discussion

Plaintiff seeks to invoke the Court's subject matter jurisdiction under CAFA.  Under CAFA, a federal district court has subject matter jurisdiction when a proposed class has more than 100 members, there is diversity of citizenship between any member of the class and any defendant, and the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs.[28]  This amount represents the aggregate claims of all putative members.[29] The only question here is whether the amount in controversy exceeded $5,000,000 when the lawsuit

---

[22]*Id. ¶* 17.

[23]*Id.* ¶ 18.

[24]*Id. ¶* 19.

[25]*Id.* n.3.

[26]Second Pirone Decl., Doc. 30-1, Docs. 31, 31, Ex. A, pp. 1–2222.

[27]*Id.*

[28]28 U.S.C. § 1332(d)(2) and (5)(B); *Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345, 1348 (2013).

[29]*Id.*

was filed.

The Court accepts the plaintiff's amount-in-controversy allegation if it is made in good faith.[30]  To dismiss for lack of jurisdiction on this basis, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[31]  Because Plaintiff has the burden of establishing jurisdiction, she "must show that it does not appear to a legal certainty that [she] cannot recover the jurisdictional amount."[32]  Once "allegations of jurisdictional facts are challenged, plaintiff must support them by competent proof, including amendments or affidavits, if necessary."[33]  The legal certainty standard is "very strict," and will generally be met only when the recoverable amount is limited by law or contract, or when there is an obvious abuse of federal court jurisdiction.[34]  In the absence of a legal certainty to the contrary, courts generally rely on the amount sought in the complaint.[35]

The Complaint asserts claims of breach of fiduciary duty and negligence, and seeks actual damages in the form of penalties and interest charged as well as and fee collected by Pershing for preparation of the tax returns.  Plaintiff asserts generally that based on 5,052 putative class members, she need only allege that each class member has an average of approximately $1000 in total actual damages.

Pershing challenges Plaintiff's allegation of jurisdiction, and calculates the amount in controversy as far less than the requisite $5,000,000.  Specifically, Pershing argues that the

---

[30]*Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 553 (2014) (discussing dispute over amount in controversy in CAFA case on motion to remand).

[31] *Watson v. Blankinship,* 20 F.3d 383, 386 (10th Cir. 1994) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938)).

[32]*Woodmen of World Life Ins. Soc'y v. Manganaro,* 342 F.3d 1213, 1216 (10th Cir. 2003) (citations and quotations omitted).

[33]*Salazar v. Furr's, Inc.,* 629 F. Supp. 1403, 1407 (D.N.M. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

[34]*Id.* at 1216–17.

[35]*Id.*

maximum amount in controversy is the Gross Tax Related Liabilities ($2,535,561) plus the Tax Return Fees ($721,100), which equals $3,256,661.[36]  In support, Pershing attaches the 990T-Return for each of the 2,222 Retirement Accounts that incurred a Tax-Related Liability in 2014. Pershing states that the remaining 2,830 Retirement Accounts for which 990T-Returns were filed for tax year 2014 did not earn taxable UBTI or incur taxes, penalties, or interest.[37]  Thus, Pershing submitted evidence showing more than half of the putative class did not incur actual damages beyond the fee paid to Pershing, resulting in an amount in controversy approximately $1.7 million short of the requisite $5 million.

Plaintiff takes issue with the 990T-Returns, arguing that they do not show the full extent of penalties and are incomplete.  Review of the 990T-Returns Pershing submitted reflects the total penalties and interests assessed by the IRS, resulting in the Tax Liability calculation for the 2,222 Retirement Accounts.   In support, Plaintiff argues that she was charged additional interest of $35.70, or 1% of her total tax bill, for her tax payment that was five months late, as reflected in the IRS transcript for her account.  Assuming Plaintiff is correct, and there is similar late payment interest charged on all 2,222 Retirement Accounts that incurred tax liability, this raises total damages by a mere 1%, which does not reasonably approach the $1.7 million gap.

Plaintiff further complains that she has not been provided refund information, so she does not know whether the IRS refunded all putative class members the amount of the penalty. Pershing's calculation of the maximum amount, however, excludes more than $1,700,000 that the IRS has rebated to the Retirements Accounts, so the amount of rebates is not relevant.

---

[36]Pershing contends the <u>actual</u> amount in controversy is the Net Tax Related Liabilities, or $795,314.54, which continues to decline as the IRS refunds penalties and/or interest to the Retirement Accounts.  Of course, the relevant time frame for calculating the amount in controversy is when the lawsuit is filed, and many of these rebates are ongoing and occurred after the case was filed in August 2016.

[37]Second Pirone Decl., Doc. 30-1.

Plaintiff next argues that because Pershing admits the class has over 5000 members and each member has actual damages including fees and expenses incurred, tax penalties and interest, the amount in controversy requirement "should easily be met."  Pershing makes no such admission, however, and submits that the 2,830 Retirement Accounts that did not owe UBTI tax in 2014 incurred no Related Tax Liabilities.  Further, Pershing included  all of the Tax Return Fees in its maximum amount calculation.  Nevertheless, Plaintiff contends that Pershing should provide the 990T-Returns for all putative class members, arguing there are other damages the Retirement Accounts may have incurred:

> [A]ll of these clients are subject to the [UBTI].  They may have no UBTI due if their UBTI income is less than $1,000 but they are still subject to the UBTI regime.  Additionally, if they have other IRAs they can only use the $1000 UBTI exemption once.  It is not known whether these individuals used their exemption elsewhere without inquiring about this issue.[38]

As Pershing notes, each Retirement Account is its own separate taxpaying entity; UBTI tax is charged to that Account, not to the account holder, and each account has its own $1000 limit.[39]  Thus, the Court agrees that such speculative, inchoate, and unrealized harm cannot be included in the amount in controversy calculation.[40]

Finally, Plaintiff requests additional time to depose Ms. Pirone and for production of the 2,830 990T-Returns that incurred no Tax Return Liability.  The court enjoys wide discretion in determining whether jurisdictional discovery is warranted.[41]  Refusal to grant discovery when a Rule 12(b)(1) motion raises factual issues constitutes an abuse of discretion if denial of the

---

[38]Doc. 27 at 2.

[39]*See* https://www.irs.gov/pub/irs-pdf/i990t.pdf  at 2 ("Each account of a type listed above is treated as a separate trust for unrelated business income tax purposes (even if there is a single owner or beneficiary for multiple accounts).") (IRS instructions to Form 990-T) (accessed July 24, 2017).

[40]*Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (explaining, once challenged, plaintiff must provide evidence beyond allegations to support amount in controversy).

[41]*First Magnus Fin. Corp. v. Star Equity Funding, LLC,* No. 06-2426-JWL, 2007 WL 635312, at *10 (D. Kan. Feb. 27, 2007).

discovery request results in prejudice to the litigant.[42]  Prejudice is present "'if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary.'"[43]  A request for jurisdictional discovery must be supported by more than a mere "hunch that it might yield jurisdictionally relevant facts."[44]

Here, Plaintiff requested jurisdictional discovery in her first response to Pershing's motion to dismiss, arguing that Pirone's unsupported affidavit was insufficient to defeat subject matter jurisdiction.[45]  The parties jointly moved to modify the scheduling order to accommodate Plaintiff's request for jurisdictional discovery.[46]  Pershing produced the 2,222 source documents for the Gross Tax-Related Liabilities, and Pirone executed a second affidavit attaching those documents and averring that the other 2,830 Retirement Accounts did not earn taxable UBTI or incur taxes, penalties, or interest.[47]  Plaintiff has not submitted any evidence that controverts the facts set forth in either Pirone affidavit.  In fact, Plaintiff has not submitted any evidence at all in support of the amount in controversy.  Plaintiff has not offered an explanation why she did not depose Pirone or request the additional 990T-Returns during the time allotted, nor has Plaintiff "stated that it has any reason to believe that the statements in [defendant's] affidavit[ ] are untrue."[48]  In the absence of any material and relevant evidence from Plaintiff to support her assertion of jurisdiction, the Court is not prepared to authorize what would amount to a fishing

---

[42]*Sizova v. Nat. Inst. of Standards & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002)  (citations omitted).

[43]*Proud Veterans, LLC v. Ben-Menashe,* No. 12-cv-1126-JAR, 2012 WL 6681888, at *1 (D. Kan. Dec. 21, 2012) (quoting *Health Grades, Inc. v. Decatur Mem'l Hosp.,* 120 F. App'x 586, 589 (10th Cir. 2006) (citing *Sizova,* 282 F.3d at 1326)).

[44]*Breakthrough Mgmt. Grp. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173, 1190 (10th Cir. 2010) (quoting *Boschetto v. Hansing,* 529 F.3d 1011, 1020 (9th Cir. 2008)).

[45]Doc. 24.  The first declaration attached a spreadsheet summarizing the Gross Tax-Related Liabilities.

[46]Doc. 25.

[47]Doc. 30-1, Ex. A.

[48]*First Magnus*, 2007 WL 635312, at *10.

expedition in an effort to establish damages that were not incurred by the majority of the putative class.  Accordingly, the Court, in its discretion, denies Plaintiff's request for additional jurisdictional discovery.

For all of the foregoing reasons, the Court finds that a reasonable estimate of the amount in controversy at the time the lawsuit was filed is $ 3,256,661, as substantiated by sworn testimony and production of the 2,222 990T-Returns.  Plaintiff has neither rebutted this evidence nor identified any additional damages that could have been incurred by members of the putative class that would account for the $1,700,000 deficit.  Because Plaintiff has not satisfied her burden that it is not a legal certainty that the class will not recover more than $5,000,000, this Court does not have subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 20) is GRANTED without prejudice.

**IT IS SO ORDERED.**


Dated: July 25, 2017

         S/ Julie A. Robinson
        JULIE A. ROBINSON
        CHIEF UNITED STATES DISTRICT JUDGE